EDWIN A. C. HATCH *vs.* MINNESOTA RAILWAY CONSTRUCTION
COMPANY and others.

April 12, 1880.

**Railway Construction Contracts construed.**—Certain provisions of two contracts—one a contract between the St. Paul & Chicago Railway Company and the Minnesota Railway Construction Company, for constructing and equipping a railroad from St. Paul to Winona; the other a contract for the delivery and payment, by the construction company, to H. M. Rice or his assignees, of a certain share of the proceeds and profits of said contract for construction and equipment—considered, construed, and applied to this case.

The plaintiff, as assignee of a part interest under a certain contract between the Minnesota Railway Construction Company and Henry M. Rice, (by which contract a share of the profits that might be realized by the construction company in the construction of the St. Paul & Chicago railway, under a contract with the railway company, was made over to Mr. Rice,) brought this action in the district court for Ramsey county against the construction company and the assignees of the residue of Mr. Rice's interest in his contract, praying for an account of the profits realized by the construction company in building such railway, and for judgment for the amount found due him on such accounting. The defendants (except the construction company) in their answers admitted the truth of the allegations of the complaint, except that the defendant Anna M. Rice denied any knowledge or information sufficient to form a belief as to the charges of fraud therein contained. The issues made by the answer of the company were tried before *Brill*, J., whose findings, as well as the two contracts above mentioned, are set out at length in the opinion. The plaintiff and the defendants (other than the construction company) appeal from an order denying their motion for a new trial.

*C. K. Davis, Henry F. Masterson* and *R. B. Galusha*, for appellants.

*Bigelow, Flandrau & Clark*, for respondent.

BERRY, J. This is an action for an accounting, and for such relief as the plaintiff may thereupon be entitled to. It was tried by the court without a jury. The findings are as follows: "That the Minnesota Railway Construction Company, the St. Paul & Chicago Railway Company, and the Milwaukee & St. Paul Railway Company, were and are corporations as alleged in the complaint.

"That on the 29th day of June, 1869, said Minnesota Railway Construction Company, and said St. Paul & Chicago Railway Company, executed the contract in writing first set out in the complaint; and on the same day, said Minnesota Rail-

way Construction Company and Henry M. Rice executed the contract in writing secondly set out in said complaint. The terms of said contracts were agreed upon by the parties respectively thereto, in the month of August, 1868."

The following is the first of the two contracts referred to :

"This agreement, made this 29th day of June, 1869, by and between the St. Paul & Chicago Railway Company, party of the first part, and the Minnesota Railway Construction Company, party of the second part, both of said parties being corporations duly and legally incorporated under the laws of the state of Minnesota, witnesseth : That whereas the St. Paul & Chicago Railway Company is desirous of securing the construction and equipment of its line of railway to connect the cities of St. Paul and Winona :

"Now, therefore, in consideration of the premises, and of the undertakings and promises of the St. Paul & Chicago Railway Company herein set forth, the Minnesota Railway Construction Company hereby agrees to obtain the necessary right of way, and to build and equip said railway according to the directions and in the manner and terms which shall be prescribed by said railway company, so that the same when completed shall, upon the average, in every way equal in its construction and equipment the First Division of the St. Paul & Pacific Railroad extending from St. Paul to Sauk Rapids.

"The said St. Paul & Chicago Railway Company, in consideration of the premises, and of the undertakings of the said Minnesota Railway Construction Company, hereby agrees to sell, transfer and assign to said Minnesota Railway Construction Company, for building and equipping said railway, as follows, viz.: *First*, $3,000,000 of the first mortgage land-grant bonds of the St. Paul & Chicago Railway Company, secured by a mortgage or deed of trust to the Farmers' Loan & Trust Company of the city of New York, dated February 1, 1868, or an equivalent amount of similar first mortgage bonds, to be secured either by a new first mortgage on the

same premises, or by a supplement or amendment of the present mortgage to the first company.

"*Second.* $3,000,000 of special preferred capital stock of the St. Paul & Chicago Railway Company, which special preferred capital stock is to be limited to $3,000,000 in amount, and is to be created and issued under and in pursuance of an act of the state of Minnesota, entitled "An act to amend the charter of the St. Paul & Pacific Railroad Company," approved February 6, 1864, also "An act to amend certain laws relating to the St. Paul & Chicago Railway Company," approved March 4, 1868, and also any other laws of the state relating to the subject, and shall give the holder thereof a preference from said railway company of 10 per centum per annum from the net earnings of said railway, and an absolute separate ownership of all the lands which have been, or which shall be hereafter, granted to or acquired by said railway company in aid of the construction of said railway, either by or from the United States, or by or from the state of Minnesota, or by or from any municipality or corporation or individual whatsoever, excepting lands used or necessary for right of way, gravel-pits and depot purposes.

"*Third.* All their right, title and interest in and to any and all of the present capital stock of $6,000,000 of such St. Paul & Chicago Railway Company now outstanding, however the same may have been issued, whether hypothecated, or held in trust, or for any other purpose whatever.

*Fourth.* All gifts, donations, bounties, or aids in any form or shape, which have been, or may hereafter be, made or given by any person, corporation, municipality or state, to aid for the construction of said railway.

"It is mutually agreed that the road shall be built according to the directions, and in the manner and time, which shall be provided by said railway company, and that the construction company are to be paid, and are to receive all their payments for the construction, in advance, and that they are to assume the contract heretofore made with Reynolds, Sauls-

paugh & Co., and Charles A. F. Morris, under which the road has been partly graded, and is to be completed, ready for the superstructure, fron St. Paul to a point near Hastings, a distance of about twenty miles.

"*Fifth.* The St. Paul & Chicago Railway Company hereby agrees to make and deliver to the Minnesota Railway Construction Company any and all further documents and instruments in writing which the Minnesota Railway Construction Company shall require, or be advised by counsel as necessary or important to them that they should have, to more effectually carry out the true intent and meaning of this agreement.

"In witness whereof the parties hereto have caused this agreement to be signed, in the name and on their behalf, by their respective president or vice-president, and secretaries or assistant secretaries, on the day and year first above named.

"THE ST. PAUL & CHICAGO RAILWAY COMPANY,

{ Seal of St. Paul &        "By EDMUND RICE,
{   Chicago Railway Co. }                "President.

"JOHN M. BURKE,

"Asst. Secretary.

"MINNESOTA RAILWAY CONSTRUCTION COMPANY,

"By RUSSELL SAGE,

"President.

"JAMES M. McKINLEY,

"Asst. Secretary."

The following is the second contract referred to :

"This agreement, made the 29th day of June, in the year 1869, by and between the Minnesota Railway Construction Company, a corporation organized pursuant to the laws of the state of Minnesota, party of the first part, and Henry M. Rice, of said state, party of the second part, witnesseth :

"Whereas, the party of the first part hereto has entered into a contract, bearing date the 29th day of June, 1869, with the St. Paul & Chicago Railway Company, providing for

the construction and equipment of its railway according to the direction, and in the manner and time, which shall be prescribed by said railway company, by which contract the party of the first part received all the interest of the said railway company in and to three millions of dollars of its capital stock, called special preferred stock, and three millions of first mortgage seven per cent. land-grant bonds, and the proceeds of the sales of all the lands of said company which have been or which may hereafter be granted, donated and acquired in aid of the construction of said railway; and, also, all the interest of said railway company in donations which may be made by any town, county, corporation, company, person or persons, of bonds, cash, or other property, including lands, save for right of way, gravel-pits, or such as may be required for depot and station grounds, in aid of the construction of said railway:

"Now, therefore, in consideration of one dollar, paid by the said Henry M. Rice, party of the second part, to the said party of the first part, the receipt whereof is hereby acknowledged, and for other valuable considerations, the party of the first part hereby covenants and agrees, to and with the party of the second part, that it will construct and equip said railway, under the direction and according to the time and in the manner which shall be prescribed by said railway company, in a prudent and economical manner, either for cash or partly for cash, or partly for the property and securities sold and transferred to it by said railway company, which, if disposed of to aid in building said railway in whole or in part, shall be sold at not less than their fair value; and will keep an accurate and just account of the cost of such construction and equipment, and of all payments made to or for the account of said railway company; and from and of the profits realized by said party of the first part, of whatever such profits shall consist, whether in stock, bonds, cash, lands, or proceeds thereof, or dividends, it will pay over, deliver and transfer to the said Henry M. Rice, party of the second part, or his legal

representatives, one-twentieth part of all net profits made or derived from the construction of said railway; and will also pay over, transfer and deliver to him, or to his legal representatives, ten per centum in kind of all bonds, cash or other valuable property, including lands—save for right of way, gravel-pits, or such as may be required for depot or station grounds—donated from whatever source, other than the United States or the state of Minnesota, to said railway company, in aid of the construction of said railway, whenever and as often as received by said party of the first part; and will also make an exhibit to the party of the second part, or his legal representatives, at all proper times, not oftener than once a month, when required, of the actual expenditures, liabilities and receipts made, incurred, or had, by reason of the said contract with said railway company; the true intent and meaning of this agreement being that the party of the second part, or his legal representatives, is to be interested to the full extent of one-twentieth part in all the profits arising from the contracts made by the party of the first part with said railway company, and ten per centum in kind of all donations, other than lands from the United States or from the state of Minnesota, or concessions made to aid in the construction of said railway, as aforesaid.

"And it is further agreed, that in case a greater aggregated amount of indebtedness, or a different amount of indebtedness, than that scheduled and stated by Edmund Rice, president of the St. Paul & Chicago Railway Company, to the president of the Minnesota Railway Construction Company, dated August 6, 1868, shall be ascertained or found to exist, by which the St. Paul & Chicago Railway Company shall be made liable for any greater amount, or in any different amount, than set forth in said schedule, that then, and in such event, the Minnesota Railway Construction Company shall have the right to deduct, and shall deduct, any such excess of liabilities arising from a change or increase of scheduled liabilities from the one-twentieth part of the interest

which the said Henry M. Rice has or can have in the profits of said Minnesota Railway Construction Company.

"In witness whereof, the said company have caused this agreement to be signed in their name, by their president and assistant secretary, and said Henry M. Rice affixed his name.

"MINNESOTA RAILWAY CONSTRUCTION COMPANY,
[Signed:]        "By RUSSELL SAGE, President.
"JAMES M. McKINLEY, Asst. Sec'y.
"HENRY M. RICE."

The findings proceed as follows, viz.:

"That on the 13th of November, 1869, said Henry M. Rice assigned and transferred to J. E. Thompson all his, said Rice's, right, title, interest, claim and demand of, in, to and under the said contract secondly set forth; and on said day said Thompson duly assigned and transferred to plaintiff the one-twelfth part of the one-twentieth part of all the profits and of the interest therein of said Thompson arising from or growing out of said contract assigned by said Rice to him, and also the one-fifth of the ten per centum in said contract agreed to be delivered and paid said Rice on account of donations therein referred to. And at or about the same time, said J. E. Thompson, at the instance of defendant Edmund Rice, and for a consideration rendered by him, and for his benefit, executed to defendant Anna M. Rice, wife of Edmund Rice, his declaration of trust, declaring that he holds and owns nine-twelfths of the one-twentieth part of the profits under said contract with Henry M. Rice, and seven-fifteenths of the ten per centum of the donations referred to in said contract, for the sole and exclusive benefit of said Anna M. Rice.

"That afterwards said J. E. Thompson died, and his estate has been administered and distributed, and each of the defendants, Susan L. Thompson, Lena B. Clarke, Katie Ashton, Carrie J. Barnum, Susie Thompson and Ella F. Thompson, are entitled to one-sixth part of the interest in said contract with Henry M. Rice remaining in said Thompson at the time of his death.

"That ever since the making of said declaration of trust, said Edmund Rice has represented and controlled the interest nominally conferred thereby upon Anna M. Rice, and has had full power and authority to act for her in all matters relating thereto, in the same manner and to the same extent as if the said interest had been nominally vested in him.

"That said Edmund Rice has been, during all the times herein referred to, a director and the president of said St. Paul & Chicago Railway Company.

"That before and about the time of making said contracts set out in the complaint, and in contemplation thereof, the board of directors of the St. Paul & Chicago Railway Company was so changed, by the aid and with the concurrence of said Edmund Rice, Henry M. Rice, J. E. Thompson and plaintiff, who were then directors of said company, that said board was composed of persons, who, with the exception of said Edmund Rice, were stockholders of said construction company, and most of whom were directors of said construction company. Eight of the nine directors of the railway company constituted a majority of the directors of the construction company, and were the owners of nearly all of the stock thereof, and so continued at the time of the sale of the railroad to the Milwaukee & St. Paul Railway Company, hereinafter mentioned. Seven of the nine directors of the St. Paul & Chicago Railway Company were directors of the said Milwaukee & St. Paul Company, and were a majority of the board of directors of said Milwaukee & St. Paul Company, which said board consisted of thirteen members, but were not the owners or in control of a majority of the stock of said Milwaukee & St. Paul Company. Exactly how much they owned or controlled does not appear.

"That shortly after the execution of said agreement, said St. Paul & Chicago Railway Company transferred to said construction company all its (said railway company's) right, title and interest in and to its capital stock of $6,000,000, as provided in said first contract, $4,000,000 of which was then

in the possession of said railway company, and was then transferred to said construction company. The remaining $2,000,000 had been theretofore pledged by said railway company as security for a loan made to it, which loan has since been paid, and said construction company has become the owner of all said stock. Said railway company also transferred to said construction company its bonds to the amount of $3,000,000, mentioned in said contract; and it also issued and turned over to said construction company the special preferred capital stock, to the amount of $3,000,000, as provided in said contract.

"That thereafter said railway construction company constructed and equipped said railroad specified in said agreements, and completed the same in the month of October, A. D. 1871. Said construction company furnished and paid the money necessary for such construction and equipment, from time to time, as hereinafter stated. And said construction company built and equipped said road according to the directions, and in the manner and time prescribed by said railway company, and to its satisfaction, and in a prudent and economical and proper manner.

"Owing to the formation of the country through which the said road passes, the cost of building the same so that it should equal in its construction the First Division of the St. Paul & Pacific Railroad, mentioned in said first contract, would have considerably exceeded the cost of building said First Division Railroad. Said construction company built said road and equipped the same in a better manner than said First Division of the St. Paul & Pacific Railroad, aforesaid, was built and equipped, and so that it was a better road in its construction and equipment, at a cost, in excess of the cost of building and equipping it so that it should have equalled and not been better than said First Division Railroad, of $260,000.

"That the bonds and stocks of said railway company aforesaid were unsalable, save at a great sacrifice, and it was

impossible to realize from their sale a sum sufficient to build
and equip said road, and on the 3rd day of February, A. D.
1871, with the consent of said Anna M. Rice and Edmund
Rice, without the consent of plaintiff or the other defendants,
the construction company surrendered to said railway com-
pany said special preferred stock, and the same was cancelled,
and in place thereof said railway company issued to said
construction company its bond for $3,000,000, payable July 1,
1871, to the order of Russell Sage and N. A. Cowdrey, as
trustees for said construction company, with interest at ten
per cent. semi-annually until said principal sum is paid; and
said railway company made and delivered to said trustees its
mortgage or trust deed upon the lands granted by the United
States in aid of the construction of the said railroad herein-
after referred to, to secure the payment of said bond and
interest; and which bond and mortgage provided that certifi-
cates should be issued to the various persons owning or inter-
ested in said indebtedness, evidencing their interests therein,
and entitling them to share in the benefits and proceeds of
said bond and mortgage; and which bond and mortgage also
provided that sales of said lands should be made, and the
proceeds used in payment of said bond, and gave said trustees
full control of said lands.    The said change was deemed by
said construction company to be for the best interests of all
concerned in said contracts, and said stock was surrendered
and cancelled, and said bond and mortgage substituted, in
good faith, and without any intention to injure plaintiff or
the other defendants; and said change did not lessen the
assets or diminish the value thereof, or decrease the profits
arising from the construction of said railroad under said
contracts, or the amount coming to plaintiff and the other
assignees of the Rice interest in said contracts.    Said bond
and mortgage is within the control of the construction com-
pany.

"That on the 3rd day of January, A. D. 1872, said railroad

then having been completed from St. Paul to Winona, a distance of 101 miles, it was contemplated by said railway company and said construction company that the same should be extended to La Crescent, in said state, a further distance of 28 miles; and the Milwaukee & St. Paul Railway Company, hereinbefore mentioned, offered to purchase the road and equipment from St. Paul to La Crescent, completed and free of encumbrance, for $4,000,000, in its bonds, bearing interest at the rate of seven per cent. per annum, payable semi-annually, secured by mortgage upon said property purchased; $3,000,000 of said bonds to be delivered upon conveyance of said road to it, and $1,000,000 thereof upon completion of said road to La Crescent, and not to draw interest until such completion. And said St. Paul & Chicago Railway Company and said railway construction company accepted said offer, and said construction company surrendered said $3,000,000 of bonds issued to it by said St. Paul & Chicago Railway Company, and released the mortgage or trust deed aforesaid securing the same, and said St. Paul & Chicago Railway Company conveyed to said Milwaukee & St. Paul Railway Company said railroad and equipment and appurtenances from St. Paul to La Crescent, and received from said Milwaukee & St. Paul Company $3,000,000 of its bonds, secured as aforesaid, which were at once turned over to said construction company; and said construction company completed said road to La Crescent on or before the 1st day of January, A. D. 1873, and received the remaining $1,000,000 of said bonds of the Milwaukee & St. Paul Company. The said road was so sold for its full value, and said sale and change of securities was made in good faith, and without any intent to injure said plaintiff or the other assignees of the Rice contract, and was made with the consent of said Edmund Rice and Anna M. Rice, and without the knowledge or consent of plaintiff or said other assignees of the Rice contract. Said sale did not lessen the property of said construction company,

or decrease the value thereof, or decrease the profits arising from the construction of said railroad under the said contracts of June 29, 1869, or decrease the amount to come to plaintiff and said other assignees of said Rice contract.

"That there was granted by the United States 462,000 acres of swamp lands to said St. Paul & Chicago Railway Company, in aid of the construction of said road from St. Paul to Winona. Said lands are located in divers portions of said state of Minnesota, 400,000 acres of which have been selected and conveyed to said railway company, the last conveyance of 190,000 acres thereof having been made in the year 1877. Sixty-two thousand acres have not yet been selected or conveyed to said company. The said lands are being offered for sale under the direction of said construction company, and a few sales of a small quantity thereof have been made; and said lands are worth, on the average, $1.50 per acre.

"That said construction company has kept proper books of account and vouchers, showing the receipts and expenditures in and about the construction and equipping of said railroad, and plaintiff and the other defendants have had access to the same, and opportunity to examine the same as they desired, and have examined the same before the commencement of this action, and the same were produced in court upon the trial.

"That on and previous to the 19th day of July, 1872, the construction company sold said $3,000,000 of the bonds of the Milwaukee & St. Paul Railway Company, at their fair value, for $2,770,415.67, and in the month of January, 1873, said company divided among its individual stockholders said $1,000,000 of the bonds of the Milwaukee & St. Paul Railway Company, received upon completion of the road to La Crescent, and said last-named bonds were taken by said stockholders at 85 cents on the dollar, which was their fair value at that time. Said bonds are now worth at the rate of one 5-100 dollars for each dollar thereof.

"That said construction company received municipal bonds, in aid of the construction of said railroad from St. Paul to Winona as follows, that is to say: upon January 3, 1871, $100,000 of the bonds of the city of St. Paul; on March 27, 1872, $100,000 of the bonds of the city of Winona, hereinafter referred to; in the month of March, 1876, $25,000 of the bonds of the city of Hastings; in the month of July, 1877, $5,550 of the bonds of the village of Reeds; and said construction company duly delivered to the said parties entitled thereto, under said contract with Henry M. Rice of June 29, 1869, the ten per centum of said bonds in kind. And said construction company, in February, 1877, received from the city of Red Wing, in aid of the construction of said road, the sum of $41,000, in money, and delivered and paid to said parties entitled thereto, under said contract with Henry M. Rice, ten per centum thereof. Said construction company, on November 29, 1872, received interest on said $90,000 of St. Paul bonds retained by it, to the amount of $8,100, and on December 16, 1872, to the amount of $2,700. In the month of February, 1873, said construction company divided said city of St. Paul bonds remaining in its possession among its stockholders, at 60 cents upon the dollar, or $54,000 in all, which was their fair value at that time; and also said city of Winona bonds at 40 cents upon the dollar, or $36,000 in all, which was their fair value at that time. The said city of St. Paul bonds are now worth 70 cents upon the dollar. It does not appear that the city of Winona bonds are worth more than 40 cents.

"That said bonds of the city of Winona had been deposited in escrow with the First National Bank of St. Paul, and were delivered to said construction company by said bank, upon the claim of said company that the conditions precedent to delivery had been performed, as alleged in the answer of said construction company in this case; and on the 12th day of August, 1874, said city of Winona commenced an action

against said company and Horace Thompson, to recover damages in the sum of $125,000 for the delivery of said bonds, claiming that said company was not entitled to said bonds, and the delivery thereof to it was wrongful; and the allegations of the answer in this case of the construction company, relative to the proceedings had in that action and the pendency thereof, are true.

"The allegations of the answer of the construction company in this case, relative to the donations by the town of Lake City, the town of Lake and the city of Lake City, and the litigation regarding the same, are true. Since the commencement of this action, the said litigation has been substantially determined by the supreme court adversely to the construction company.

"That there has been other litigation, beginning in January, 1872, and pending until in September, 1877, involving the right of the construction company to have the donations hereinbefore referred to from the municipalities mentioned, save the city of St. Paul, and in which litigation said various municipalities, or citizens thereof, sought to defeat said donations.

"In the month of April, 1874, an action was commenced to determine the title of said St. Paul & Chicago Railway Company to a large portion of said swamp lands hereinbefore referred to, which was then in dispute, and said action was pending until June, 1877, when the same was finally determined. The allegations of the answer of the construction company relative to the claim of Thornton & Co., and the litigation growing out of the same, are true. The action brought by said Thornton & Co. was finally determined on the 19th day of January, 1878.

"The allegations of the answer and the supplemental answer of the construction company, relative to the claim of Edmund Rice for $35,000, as salary, and the commencement of an action against said company to recover the same, are true;

30

and said claim was settled, and the action dismissed, as alleged in the supplemental answer.

"That the litigation hereinbefore referred to has been necessary upon the part of the construction company, and has been conducted by it in good faith, and has not been unreasonably delayed by said company; and said company has been compelled to make, and has made, large expenditures of money in carrying on said litigation, and will be compelled to make further expenditures in conducting the litigation now pending as aforesaid.

"In the month of February, 1869, the construction company advanced to said Edmund Rice the sum of $7,000, under an agreement between said company and Henry M. Rice aforesaid, that said sum so advanced should be retained by said company out of the ten per cent. interest in donations provided for in said contract of June 29, 1869, with Henry M. Rice; but by mistake said sum has not been so retained or repaid in any way, and it is agreed by the parties to this action that said sum, with interest from January 3, 1871, may be deducted from any sum to which said assignees of the Henry M. Rice contract may be entitled under said contract of June 29, 1869.

"That the necessary cost of the right of way for said road from St. Paul to Winona, and of the material for and the labor of constructing said road, as the same was built, was $2,383,839, which sum was paid therefor by said construction company, from time to time as the work progressed, and afterwards, in the usual course of business. The greater part thereof was paid in the years 1869, 1870, 1871 and 1872. A small portion thereof was paid at divers times in the years 1873, 1874, 1875, 1876 and 1877. The said construction company equipped said entire road from St. Paul to La Crescent, as one line, with cars and locomotives, the cost whereof was $224,375, paid at divers times by said company, the last payment on account of which was made in the month

of January, A. D. 1872.   The necessary cost of equipment of said road from St. Paul to Winona, in the manner in which it was equipped, is 100-128 part of said last-named sum; that is to say, $177,045.95, and no more.   In the execution of said contracts for constructing and equipping said road from St. Paul to Winona, as aforesaid, said construction company has necessarily incurred and paid other expenses, for which it is entitled to credit to the amount of $131,568.17, in which sum is included the expenses of the litigation hereinbefore referred to, so far as the same are ascertained and paid at this time; and also there is included the amount of $17,500 paid Edmund Rice, hereinbefore referred to, and $9,583.18 additional paid said Rice for services, which said last two amounts are so included by consent of all parties; and there is also included, by consent of all parties, the sum of $7,890.12, paid Russell Sage for services.   The said amount paid for expenses has been paid in various sums and at divers times, from the time of the making said contracts down to the month of October, 1877.

"In the month of December, A. D. 1869, said construction company lost, by the defalcation of its treasurer, one James H. Benedict, the sum of $49,362.14, money of said company for use in the prosecution of said work, in the hands of said Benedict as such treasurer.   The company claims that it should be allowed said sum as a part of the expense of executing said contracts.   Said loss is not a part of the expense of executing said contracts, and said company is not allowed said sum as a credit, and the sum is not included as an expenditure in the amount above stated.   On the 20th day of January, A. D. 1873, the said construction company allowed and paid to its individual share-holders, in proportion to the amount of stock held by them respectively, the sum of $360,000, as interest upon the moneys paid to said company by said share-holders upon the stock held by them, the said money having been used by said company in constructing and equipping said road from St. Paul to La Crescent, as afore-

said; and said company has in its accounts credited itself with $336,051.35 of said sum as part of the expense of executing said contracts of June 29, 1869, and claims that it should be allowed said last-named sum as an item of expense as aforesaid. Said last-named sum is a balance of said $360,000 above the sum charged to said share-holders by said company, as interest for delays in payment of assessments upon their stock as called for by said company. The said amount is not included in the expenditures hereinbefore stated, and is not allowed as a credit to said company.

"That if the claim of Thornton & Co., aforesaid, in the action hereinbefore referred to, had been sustained, it would have been necessary to have taken the same into consideration in an accounting between said construction company and the other parties to this action, and the amount chargeable to said company would have been materially reduced, and the condition of the property received by it changed; and it was impossible to ascertain how much money or property said assignees of the contract with Henry M. Rice were entitled to receive during the pendency of said action, and the same could not be determined definitely during the pendency of any part of the litigation hereinbefore referred to.

"That said assignees of the contract with Henry M. Rice demanded of said construction company, in the month of May, 1873, and afterwards, an accounting under said contracts of June 29, 1869, and demanded that it pay and deliver to them the portion of profits to which they were entitled under said contracts; and said company and said assignees were unable to agree upon a statement of the account between them before the commencement of this action, and were unable to agree upon the amounts with which said company was chargeable, or the amounts with which said company should be credited. Said company has refused to pay or deliver to said assignees any money or property besides that already paid and delivered as hereinbefore stated.

"The allegations of the supplemental answer of the con-

struction company, that said Edmund Rice makes a claim
and has commenced an action to recover the sum of $7,152
and interest from the corporators of said company, are true.
It does not appear that said claim affects, or the recovery
thereof will affect, the settlement of the accounts between
said company and the other parties to this action.   That said
accounts have been produced and submitted to the court for
settlement, so far as the same can be had.   An account can
be, and it is proper and for the interest of all parties that it
should be, stated at this time, in which the profits of building
and equipping said road under said contracts of June 29, 1869,
may be arrived at, save in as far as the same may be de-
creased by the result of the action of the city of Winona
against said construction company, hereinbefore referred to.

"Save as aforesaid, the allegations of the pleadings are not
proved, and are found not to be true.

"The conclusions from the foregoing facts are:

"That a statement of the account between the construction
company and the other parties to this action should be made,
and the profits of building and equipping said railroad from
St. Paul to Winona determined, save in so far as the same
may be affected by the result of the action aforesaid by the
city of Winona against said company.

"In stating said account, the construction company is
chargeable with the 101-128 part of the $4,000,000 of the
bonds of the Milwaukee & St. Paul Railway Company re-
ceived upon the sale of the road from St. Paul to La Cres-
cent—that is to say, with $3,156,250 of such bonds; and the
said bonds having been disposed of, the company is charge-
able with the proceeds of the first $3,000,000 thereof—that is
to say, the sum of $2,770,415.67; and the remainder of said
bonds having been divided among the individual corporators
of said company, and there having been no necessity for dis-
posing of them at all, the company is chargeable with their
present value, to wit, $164,062.50, as aforesaid.

"The construction company is chargeable with the 90 per centum of the municipal bonds and money received in aid of the construction of said road; that is to say, it is chargeable with the $10,800 interest received on the bonds of the city of St. Paul, with the sum of $36,900 in money received from the city of Red Wing, with the sum of $36,000 received from the city of Winona bonds, and with the sum of $63,000, the present value of the bonds of the city of St. Paul, which were divided among the individual stockholders of said company.

"The company is not chargeable with the difference between the actual cost of the building and equipping said road, as it was, in fact, built and equipped, and its cost if it had been built and equipped so that it had equalled, and not been better than, the construction and equipment of the First Division of the St. Paul & Pacific Railroad from St. Paul to Sauk Rapids.

"The company is not chargeable with any amount on account of the surrender of the special preferred stock of the St. Paul & Chicago Railway Company, or on account of the surrender of the $3,000,000 of bonds of said St. Paul & Chicago Railway Company, or on account of the sale of the said railway to the Milwaukee & St. Paul Railway Company, further than hereinbefore or hereinafter stated.

"The construction company is entitled to be credited with the amount actually expended by it in obtaining the right of way, and building and equipping said railroad; that is to say, the sum of $2,383,839, for right of way, labor and material as aforesaid; the sum of $131,568.17, for other expenses as aforesaid, and the sum of $177,045.95, being 101-128 part of the amount expended for cars and locomotives for the entire line from St. Paul to La Crescent, as aforesaid.

"The company is not entitled to be credited in said account with the amount lost through the defalcation of its treasurer, as aforesaid, or any part thereof.

"The company is not entitled to be credited with the amount

paid, as aforesaid, to its stockholders, as interest,.or·any part·
thereof.

"The company is chargeable in all, as aforesaid, with the
sum of three million eighty-one thousand one hundred and
seventy-eight and 17-100 dollars,    -    -    $3,081,178.17
and is entitled to be credited with the sum of
two million six hundred and thirty-two thou-
sand four hundred and fifty-three and 11-100
dollars,    -    -    -    -    -    -·    $2,632,453.11
_____
Remaining in its hands,    -    -    -    $448,725.06

"The company will also be entitled to be credited with the
amount necessarily expended by it in the further progress of
the action aforesaid by said city of Winona against it, and
will be entitled to a credit, further, of the amount hereinbefore
charged to it on account of said bonds of the city of Winona,
one-twentieth of which amount it would be entitled to with-
hold from the amount coming to the assignees of said contract
of Henry M. Rice, and also the ten per centum of said bonds
delivered to said assignees, as hereinbefore mentioned.

"The company will not be entitled, in any event, to any
credit on account ·of the action of Edmund Rice, brought
to recover $7,152, referred to in its supplemental answer.

"The said sum of $448,725.06, and the proceeds of the
other property received by said company and undisposed of—
to wit, the $5,000 of the bonds of the village of Reeds, the
$22,500 of bonds of the city of Hastings, the common stock
of the St. Paul & Chicago Railway Company, and the bond
for $3,000,000 secured by the mortgage or trust deed upon
the lands, with the said lands represented by said stock—less
any sum to be deducted, as aforesaid,· on account of said
action of the city of Winona against the construction com-
pany, constitute the profits in which said assignees of the
contract with Henry M. Rice are entitled to share.

"It is not necessary that all distribution of ·profits be de-
ferred until the final disposition of said action last aforesaid,

but, provision being made for the protection of the construction company, division of the said profits may be made among the parties, according to their respective rights.

"The construction company is entitled to the nineteen-twentieth part of the said sum now in its hands; the other parties to this action are entitled to the one-twentieth part of the said sum—that is to say, they are entitled to the sum of twenty-two thousand four hundred and thirty-six and twenty-five one-hundredths dollars ($22,436.25.) From this is to be taken said $7,000, and interest paid to Edmund Rice, as hereinbefore stated, being the sum of $11,103.75, leaving to be paid to said parties by said company the sum of eleven thousand three hundred and thirty-two and forty-five one-hundredths dollars, ($11,332.45,) of which plaintiff is entitled to one-twelfth part, to wit, $994.37; said Anna M. Rice to the nine-twelfths part, $8,499.33; said Susan L. Thompson, Lena B. Clarke, Katie Ashton, Carrie J. Barnum, Susie Thompson and Ella F. Thompson each to the one thirty-sixth part, to wit, $314.79 each, for which said several sums said parties are entitled to judgment.

"To the end that distribution be made of the remainder, a receiver should be appointed of the property undisposed of, as aforesaid, to sell the same, and, after retaining in his hands an amount, to be fixed by the court, sufficient to cover any liability of the parties in respect to the action of the city of Winona against the construction company, to abide the result of that action, to make distribution of the proceeds among the parties hereto in the proportion aforesaid.

"Let judgment be entered accordingly."

The plaintiff and all of the defendants, except the construction company, moved for a new trial, upon the ground that the findings of law and fact are not justified by the evidence and are contrary to law, and from the order denying the motion the moving parties appeal to this court.

In considering the questions raised in this case we cannot, perhaps, do better than to determine at the outset the mean-

ing of some of the provisions of the two contracts above recited. By the first contract, the construction company agrees to build and equip the railway according to the directions and in the manner and terms which shall be prescribed by the said railway company, so that the same, when completed, shall, upon the average, in every way equal in its construction and equipment the First Division of the St. Paul & Pacific Railroad, extending from St. Paul to Sauk Rapids. The plain meaning of all this is that the construction company shall build and equip the railway according to the prescribed direction, and so that its construction and equipment shall, upon the average, be in every way as good as those of the first division railway spoken of. The only purpose was to fix a standard to which the construction and equipment of the railway to be built and equipped should come up. The price to be paid being fixed, and, so to speak, liquidated, so that it was not at all dependent in amount upon the character or quality of the equipment or construction of the road, it is impossible to conceive of any other motive or purpose in inserting this provision in the contract. Certainly, the railway company could not have intended to prohibit the construction company from building and equipping the railway *better* than it was bound to build it. The railway company could have no reasonable motive for so doing, whether its intention and expectation were to keep and operate the railway, or to dispose of it.

By the second contract—to wit, the contract with Henry M. Rice—the construction company agrees "that it will construct and equip said railway, under the direction, and according to the time, and in the manner which shall be prescribed by said railway company, in a prudent and economical manner." It will be observed that this provision makes no reference to the road of the First Division of the St. Paul & Pacific Railroad Company as a standard of comparison or otherwise, but the agreement is to construct and equip under the direction, and according to the time and in

the manner, which shall be prescribed by said railway company. At most, then, the provision in the first contract referring to the road mentioned as a standard of comparison would have no effect in the second contract, except as a direction of the railway company, or manner of construction and equipment prescribed by such company. It could, therefore, have no more effect on the second contract than that which we have already seen that it has in the first, and we perceive no reason why, as respects any of the rights of the parties claiming under the second contract, it would have not been entirely competent for the railway company to have waived or changed it.

Now the court below has found that the construction company built and equipped the road according to the directions, and in the manner and time prescribed by the railway company, and to its satisfaction, and in a prudent, economical and proper manner, and this finding is abundantly sustained by the evidence. In the construction which we have placed upon the contract provisions just considered, it is therefore not at all important that the road has been so built and equipped as to be a better road than that of the First Division mentioned in the first contract, or that it cost $260,000 more than it would have cost had it been only equal in construction and equipment to the road of said First Division.

Further provisions of the second contract require the construction company to construct and equip said railway "either for cash, or partly for cash, or partly for the property and securities sold and transferred to it by said railway company, which, if disposed of to aid in building said railway in whole or in part, shall be sold at not less than their fair value; and will keep an accurate and just account of the cost of such construction and equipment, and of all payments made to or for the account of said railway company; and from and of the profits realized by said party of the first part, of whatever such profits shall consist, whether in stock, bonds, cash, lands or proceeds thereof, or dividends, it will pay over, deliver and

transfer to the said Henry M. Rice, party of the second part, or his legal representatives, one-twentieth part of all net profits made or derived from the construction of said railway; and will also pay over, transfer and deliver to him or to his legal representatives ten per centum in kind of all bonds, cash or other valuable property, including lands—save for right of way, gravel-pits, or such as may be required for depot or station grounds—donated from whatever source, other than the United States or the state of Minnesota, to said railway company, in aid of the construction of said railway, whenever and as often as received by said party of the first part. * * * * The true intent and meaning of this agreement being that the party of the second part, or his legal representatives, is to be interested to the full extent of one-twentieth part in all the profits arising from the contracts made by the party of the first part with said railway company, and ten per centum in kind of all donations, other than lands from the United States or from the state of Minnesota, or concessions made to aid in the construction of said railway as aforesaid."

These provisions clearly contemplate, and, in effect, expressly authorize the construction company, for the purpose of paying the expense of constructing and equipping the railway, to dispose of the whole or a part of the property and securities transferred to it by the railway company. The requirement, that if so disposed of they shall be sold for not less than their fair value, does not necessarily require a sale for cash. It is sufficiently complied with, if, in good faith, and in view of and for the purpose of promoting the best interests of all concerned, they are exchanged for other property which appears to be better suited to advance the objects for which it was held. The provisions in regard to the division of profits make it clear that the construction company was authorized to reimburse itself for its outlay in constructing and equipping the road before the other party to the contract was entitled to receive anything towards his share

of profits. Rice or his representatives were to receive one-twentieth of the net profits—that is to say, one-twentieth of what remained after the cost of constructing and equipping, and attendant expenses, had been repaid. For the purpose of repaying itself, the construction company had an unquestionable right to convert the property and securities transferred to them by the railway company into money, either directly or indirectly, by selling them for cash, or by exchanging them for something which would bring cash, or furnish the company with necessary resources.

With these views of the meaning and effect of the contract between the construction company and H. M. Rice, we are of opinion that the surrender of and cancellation of the preferred stock were within the authority of the construction company, and that, upon the facts found by the court below, (which are amply sustained by the evidence,) the construction company did not violate its agreement with H. M. Rice, or render itself liable to him or his representatives, by thus surrendering the stock in exchange for the three million bond and mortgage. Notwithstanding the surrender of the preferred stock, the construction company held everything that could be represented by it, for it held all the common stock of the railway company, which was the only stock in existence after the cancellation of the preferred stock, and all the bonds and mortgages which the railway company had issued. For all practical purposes, then, it held and owned all the property of the railway company. The transaction by which the preferred stock was exchanged for the $3,000,000 bond and mortgage was, then, in fact and effect, merely a change in the form of securities, and the court below very properly held that it did not lessen the assets of the construction company, or diminish their value, or decrease the profits arising from the construction and equipment of the railroad, under the contracts, or the amount coming to the assignees of H. M. Rice; and upon this branch of the case the court was also right in holding, as a conclusion of law, that the construction company

was not chargeable in any amount on account of the surrender of the preferred stock.

The sale of the road to the Milwaukee & St. Paul Railway Company, and, as a part of the same transaction, the surrender of the $3,000,000 of bonds issued by the St. Paul & Chicago Railway Company to the construction company, under the contract between them, stand upon a like basis as the surrender of the preferred stock, and considerations analogous to those suggested as to the latter are applicable to the former.   In our opinion the conclusions of the court below, as to the nature and effect of the sale and surrender, are correct.   The construction company is not chargeable on account of the same, otherwise than as respects the bonds received in payment therefor.

These views in regard to the surrender of the preferred stock, the sale of the road to the Milwaukee & St. Paul Company, and the surrender of the three millions of bonds, render it altogether immaterial whether these transactions were assented to by Mrs. Rice or not.   It is, therefore, of no importance whether the findings of the court in reference to her assent are supported by the testimony, or by the law, or not.

The provisions before quoted from the second contract, in reference to the division of the net profits, as we interpret them and as appears to be agreed by counsel, entitle the appellants, as representatives of H. M. Rice, to their one-twentieth part, in kind; that is to say, one-twentieth *in specie* of such net profits, whether they are in the form of "stock, bonds, cash, lands or proceeds thereof, or dividends." Upon this theory the court below seems to have proceeded; except in its direction for the appointment of a receiver to sell the property in the hands of the construction company, not disposed of, and to distribute the proceeds so as to give their one-twentieth to the appellants.   The views at which we have thus arrived in reference to the meaning of the contracts between the Chicago & St. Paul Railway Company and the

construction company, and between the latter and H. M. Rice, and in reference to the findings of the court heretofore alluded to, appear to us substantially to dispose of the important questions in the case.

We do not propose in this opinion to enter into a detailed examination of the calculations and figures in the findings of the court below. Though upon the argument at bar we were very strongly impressed with the soundness, in the main, of the positions taken by the respondent's counsel, and with the general correctness, so far as appellants are concerned, of the conclusions of the court below, the appellants' case was so strenuously presented by their counsel that we have examined and studied the evidence with unusual care and diligence, and have also endeavored duly to weigh and consider the arguments of counsel. As a result, we are of opinion that there are no important errors in the findings of fact or of law by which the appellants are prejudiced, or of which they can justly complain. We think the court below was amply warranted by the testimony in finding the plaintiff's allegations of defendants' fraud and corruption not proved and untrue. With reference to the swamp lands, the testimony fails to furnish data from which it can be ascertained how much has been received from sales of the same. As to these swamp lands, the court below might, in this meagre condition of the testimony, very properly have considered that both lands and proceeds were represented and fully covered by the three million bond and mortgage which are in the control of the defendant, and by the unsold lands of which the construction company practically holds the fee simple by virtue of its ownership of all the outstanding stock of the St. Paul & Chicago Railway Company, to wit, the $6,000,000 of common stock mentioned in the findings.

The case comes here upon an appeal from an order denying a new trial. For the reasons above assigned we are of opinion that this motion was properly denied. The appeal does

not reach the direction of the court below as to the duties of the receiver. As respects that matter, if any relief is desired, it must be sought in some other way.

Order affirmed.