## LAWTON RAPID TRANSIT RY. CO. v. CITY OF LAWTON et al.

No. 1324. Opinion Filed March 12, 1912.

(122 Pac. 212.)

1. **APPEAL AND ERROR—Review—Questions of Fact.** Where an issue joined is specifically found by the court in favor of plaintiff, and the evidence reasonably tends to support the finding, such finding will not be disturbed on review in this court.

2. **JUDGES—Disqualification—"Interest."** In a proceeding to condemn land, pursuant to chapter 15, art. 10, and sections 1370 to 1374, inclusive, of chapter 20, art. 9, Comp. Laws 1909, the interest of the district judge as a resident taxpayer of the petitioning municipality is not such an "interest" within the contemplation of section 2012 of said statutes as will disqualify him to act upon the petition and try the cause.

3. **EMINENT DOMAIN—Proceedings to Assess Compensation—Admissibility of Evidence.** On trial to a jury to assess damages in a proceeding to condemn land, pursuant to chapter 15, art. 10, and sections 1370 to 1374, inclusive, of chapter 20, art 9, Comp. Laws 1909, a report of the United States geological survey issued by the Department of the Interior is not admissible in evidence.

4. **SAME.** On trial to a jury to assess damages in a proceeding to condemn land, pursuant to chapter 15, art. 10, and sections 1370 to 1374, inclusive, of chapter 20, art. 9, Comp. Laws 1909, testi-

mony offered to show mere possible or imaginary uses or specula-
tive schemes of the owner with reference to the land sought to be
condemned is not admissible in evidence.

5. **SAME.** A booklet purporting to advertise as a health resort the
land sought to be condemned, pursuant to said sections, not ''for
anything that appears in the book, but just to show the status
of the land, and what they had done prior to that time with
regard to it,'' is inadmissible in evidence.

6. **SAME.** Where, after introducing evidence tending to prove that
at the time the proceedings to condemn were commenced the most
profitable use to which the tract could be put was for farming
purposes, it was not error to permit the witness to testify, in
effect, that its value for that purpose at that time was $3 per
acre.

7. **SAME.** In a proceeding to condemn land, pursuant to chapter 15,
art. 10, and sections 1370 to 1374, inclusive, of chapter 20, art.
9, Comp. Laws 1909, on trial to a jury to assess damages, it
was not error for the court to exclude testimony offered to prove
the revenue derived by the city from the water used from the
dam in question from the date of the first taking of water there-
from up to the time of trial.

8. **EVIDENCE—Admissions—Offer to Purchase Land.** In a proceed-
ing to condemn land, pursuant to chapter 15, art. 10, and sec-
tions 1370 to 1374, inclusive, of chapter 20, art. 9, Comp. Laws
1909, on trial to a jury to assess damages, it was not error for
the court to exclude testimony offered to prove, for the purpose
of showing an admission against the interest of the city, in
effect, an offer of the property to the city, in the shape of a pro-
posed written contract, with certain reservations, for $25,000; and
a further offer to prove an order of the city council of the peti-
tioning municipality approving said proposed contract, and that
said order had been vetoed by the mayor on grounds other than
that the value stated in said contract was excessive.

(Syllabus by the Court.)

*Error from District Court, Comanche County;*
*G. A. Brown, Judge.*

Condemnation proceedings by the City of Lawton and others
against the Lawton Rapid Transit Railway Company. Judgment
for plaintiffs, and defendant brings error. Affirmed.

*J. Elmer Thomas* and *Stevens & Myers,* for plaintiff in error.

*Charles C. Black,* for defendants in error.

TURNER, C. J.   On January 22, 1908, on the filing of the
petition of defendant in error, the city of Lawton, a city of the

first class, in the district court of Comanche county, the district judge of that county appointed commissioners to condemn, for the use of said city, among others, certain lands belonging to plaintiff in error, necessary to enable petitioner to construct a dam across Medicine creek and impound and flow back its waters and connect the same with the pumping plant of said city, some twelve miles away, by pipe line across said lands, for the purpose of furnishing said city with a water supply, pursuant to chapter 15, art. 10, and sections 1370 to 1374, inclusive, of chapter 20, art. 9,. Comp. Laws 1909. On February 26, 1908, said commissioners filed their report and awarded defendant:

"For taking of the north half of the northwest $\frac{1}{4}$ of said Sec. 18, Twp. 3 N., R. 12 W. I. M., by the city of Lawton for the purpose of dam site and storage of water, etc., $800.00. For the right of way for the pipe line as described in said foregoing notice, the sum of $50.00. For the taking and diverting of water and for the damage to the residue of said land caused by the taking of land and water and right of way and for full compensation for all other damage done or to be done by the construction of said dam and impounding of water and taking of land and water, and right of way, the sum of $2,150.00."

On March 18, 1908, defendant, feeling aggrieved, in due time made proper application for a trial by jury, and later sought to and did disqualify said district judge, the Honorable J. T. Johnson, by reason of interest on the ground that he was at that time a property owner and taxpayer of said city. Later Hon. G. A. Brown, judge of the Eighteenth district, was duly assigned by the then Chief Justice of this court to sit in judgment on said cause, whereupon defendant moved the court, in effect, to dismiss all proceedings had in the cause prior to that time on the ground that, said former judge being as well disqualified at the time said proceedings were had as when he so certified, all orders made by him were void. After said motion and an application for a change of venue were overruled, there was trial to the jury and judgment for defendant for $4,000, to reverse which defendant brings the case here.

As to the error alleged that "there was no *bona fide* effort at amicable adjustment on the part of the city, required by the

statute as a condition precedent to instituting this proceeding," it is sufficient to say that, as that issue joined is specifically found by the court in favor of plaintiff and the evidence reasonably tends to support the finding, we will not disturb it.

Neither were Judge Johnson's orders void as contended. We take judicial notice of the fact that he was the regular judge of the district where the land lay and in which the petition was filed; that he had jurisdiction of the subject-matter and the parties, and know, as a matter of law, that he was not disqualified when the proceedings before him were had and when he certified to his disqualification. This for the reason that his interest as a resident taxpayer of the petitioning municipality was not such an interest within the contemplation of the statute as disqualified him to try the cause. Both Comp. Laws 1909, sec. 2012, and section 170 of the Code of Civil Procedure of California, provide, in effect, that no judge shall sit in any action or proceeding in which he is interested. *Los Angeles v. Pomeroy*, 133 Cal. 529, 65 Pac. 1049, was a suit similar to the one at bar. An attempt was made to disqualify the trial judge which failed. On precisely the same question involved here, and construing said section 170, the court said:

"The appeal presents the question whether or not the judge was disqualified to try the case on account of interest; and the only fact upon which the disqualification is asserted is undisputed, viz., that he owned some real property within the city limits. This fact did not disqualify him. The mere contingency of a possible future increase or decrease of taxation within a municipality is too remote and indistinct to disqualify a party, upon the sole ground that he owns taxable property within its limits; and this is the sole ground of the alleged disqualification in the case at bar. The legal aspect of the questions is not changed by the suggestion of the counsel that the value of the property sought to be condemned was alleged by defendants to be over a million and a half dollars (found by the jury to be only $25,000), and, that if the alleged value had been established, then municipal bonds to provide for the amount would have been necessary, unless the city should abandon the proceedings, etc. The suggestions are themselves only of remote contingencies. The case at bar is within the rule declared in *Oakland v. Oakland Water Front Co.*, 118 Cal. 249 [50 Pac. 268], and *Meyer v. San*

*Diego,* 121 Cal. 102 [53 Pac. 434, 41 L. R. A. 762, 66 Am. St.
Rep. 22], where the interest of the judge was direct, immediate,
and precise, it being a case, as stated in the opinion therein ren-
dered, where the judge, in a case directly involving the validity
of a tax imposed and to be imposed on his land, does by his *ipse
dixit* declare whether the burden shall remain or be removed."

This case clearly marks the line of cleavage between those
cases where the interest of the judge is direct and disqualifying
and indirect and not so. *State of Minn. ex rel. Bass v. Mac-
donald,* 26 Minn. 451, 4 N. W. 1111, was a proceeding to con-
demn a road under a statute strikingly similar to the governing
statute here. The judge who appointed the commissioners, and
who later presided in the trial of the case to a jury for the pur-
pose of assessing damage, was a taxpayer in one of the counties
through which such road was to run. Effort was made to dis-
qualify him by reason of his interest in the case, which was un-
successful. The court said:

"The judge was not disqualified from acting upon the peti-
tion because he was a taxpayer in Scott county, where he resided,
and through which the road was to run. The statute expressly
makes it his duty to act upon every application of the kind arising
within his district, and no exception is made on account of any
interest of this remote kind, although it must have been within
the knowledge of the Legislature that the judge upon whom it im-
posed the duty would necessarily be a resident, and presumably
a taxpayer, in one or more of the counties of his district."

This doctrine is well established. See *Foreman et al. v.
Town of Marianna,* 43 Ark. 324; *Peck et al. v. Freeholders of
Essex County,* 20 N. J. Law, 457; *Thornburgh v. City of Tyler,*
16 Tex. Civ. App. 439, 43 S. W. 1054; 23 Cyc. 578; 17 Am. &
Eng. Enc. of L. 735, and the valuable note to *Grafton v. Holt,* 6
Ann. Cas. 406, citing numerous authorities.

For the "purpose of showing the geological formation and
description of the property as appears from the geological survey
of the United States," and "just to show the condition and the
general formation of the country as shown by this survey and
report and the record of the government to that effect showing
the topography," defendant, in the course of its testimony, offered
in evidence page 136 of a book entitled "Geological and Water Re-

sources of Oklahoma, by Chas. N. Gould," issued by the Department of the Interior, United States Geological Survey, 1905, which reads:

### "IRRIGATION FROM RESERVOIRS.

"The greatest difficulty in the construction of large reservoirs in Oklahoma is that so few available sites exist. All of the larger streams of the territory flow for practically all their course though broad and shallow sand filled channels. There are comparatively few localities where streams flow through narrow gorges and masonry dams might be constructed. Of these localities the most satisfactory that have so far been examined are located in the Wichita Mountains. In October, 1903, the writer in company with Mr. Bailey Willis, of the United States geological survey, visited the most available of these sites in these mountains. The following descriptions are from Mr. Willis' report:

### "MEDICINE BLUFF SITE.

"In Sec. 7, T. 3 N., R. 12 W., the valley of the Medicine Bluff creek is an extensive bottom land, approximately from 1 to 1½ miles wide 60 feet above the stream level. The stream itself has moderate fall. Near the south line of the section the valley narrows to a canyon 75 feet deep and 400 feet wide between steep walls. Beneath the wider valley the rock is rather impervious red shale and sandstone; in the canyon it is granite, more or less jointed, but forming a fairly solid mass, suitable for the foundations of the dam. The stream in the canyon runs on bed rock.

"The drainage area tributary to this site is estimated from the map at about 90 square miles. The waters from the reservoir might be conveyed a distance of ten miles down the valley to Fort Sill and thence over the prairie lands in the vicinity of Lawton. The height of the dam site above Lawton, is 200 feet, and the water would be available upon the highest prairies of the neighborhood.

"The value of this reservoir site is limited by the small area tributary to it. Medicine Bluff has the reputation of being a comparatively constant stream for the region; but from field observation, without measurement, it would appear probable that the greater part of its flow throughout the year could be stored without utilizing the entire capacity of the reservoir.

### "BLUFF.

"The waters from Medicine creek flow largely from granite slopes and so far as they are derived from other rocks are not contaminated by gypsum or alkali."

—Which was excluded by the court, and which, defendant says, was error. We do not think so, for the reason that no authority is cited in support of its competency, and we can find none. Being incompetent, it was not rendered admissible under Wilson's Rev. & Ann. St. 1903, sec. 4563, or any other section called to our attention.

It is further assigned that the court erred in excluding "Exhibit B" offered in evidence by defendant. Leading up to the offer, the testimony disclosed that on March 29, 1906, Lloyd and Thomas, the owners of the 80 acres in controversy, entered into a contract with the Kansas City, Mexico & Orient Railway Company, known as the "Orient Road." This contract was marked "Exhibit B," and was offered in evidence, and shows, in effect, that the parties thereto agreed to incorporate the defendant Rapid Transit Company, and construct and operate a railway "from a point on the main line of the Kansas City, Mexico & Orient Railway Company, at, near, or in the vicinity of Sentinel, or near a point northwest from the city of Lawton, Oklahoma Territory, extending therefrom in a southeasterly course to the city of Lawton, and as near as may be (having regard to economic construction and the best adaptable grades and alignment), to, or near the northwest corner of section seven (7), township three (3) north, range twelve (12) west, in Comanche county, Oklahoma," the tracks of said road, when constructed, to be used by said company for rapid transit purposes from Lawton to a health resort to be located as near as possible to the point already mentioned as being at, or near, the northwest corner of section 7. As the testimony throughout discloses that there were no improvements of any kind on the land in controversy, but the same to be in a state of nature, we fail to see how a contract between the owners of the land and a railroad company to build a line of road beginning miles away and ending miles away from the land, and which fails to show on its face that the proposed lines were intended to run anywhere near thereto, could in any way affect the issues in this cause, or tend to show the use the owner intended made of the property taken, and for that reason, and that defendant fails to cite any authority in support of his contention and we can find

none, we hold that the court did not err in rejecting the tender. Besides, if this was an attempt to show, or lay a foundation to show, the prospective value of the land when the company should be formed and the property taken over and converted into a health resort and the prospective road built as provided for in the contract, such evidence was not admissible, for the reason that the value must be actual, and not merely speculative or possible.

In *Central Pac. R. R. Co. v. Pearson*, 35 Cal. 247, defendant attempted to prove what the land would be worth to the owner, provided the state would thereafter grant him a wharf franchise, which fact was held by the court too remote and speculative, and hence inadmissible. We can see no difference in principle between that case and here where defendant offers to prove that it has secured a contract for said road, in order to show, or lay a foundation to show, a prospective value when the railroad is built. On this point the court in *T. L. H. G. M. S. v. C. M. Ry. Co.*, 16 Colo. 1, 27 Pac. 258, says:

"That in estimating damages merely possible or imaginary uses or speculative schemes of the proprietor are to be excluded, see Pierce on Railroads, 217; *Searle v. Lackawanna & B. Ry.*, 33 Pa. 57; *Dorlan v. East Brandywine & W. Ry.*, 46 Pa. 520; *Fleming v. Chicago, D. & W. M. R. Co.*, 34 Iowa, 353; *Worcester v. Great Falls Manf. Co.*, 41 Me. 159 [66 Am. Dec. 217]; *Lake Shore & M. S. R. Co. v. Cin., S. & C. R. Co.*, 30 Ohio St. 604. That it is proper to put in evidence the present and any reasonable use in the future to which the property may be adapted, but not the intentions of the owner as to such future use of the land, see *Sherwood v. St. Paul & C. R. Co.*, 21 Minn. 127; *Pinkham v. Shelmsford*, 109 Mass. 225; *Fairbanks v. Fitchburg*, 110 Mass. 224."

See, also, 10 Am. & Eng. Enc. Law, p. 1163, note 7.

But, if the court erred, the same was immaterial, for the reason that defendant's evidence fully developed, in substance, that it was duly organized; that pursuant to some arrangement, and on January 20, 1908, the Wichita Mountain & Orient Railway was located and surveyed throughout and across the Ft. Sill military reservation, pursuant to an act of Congress, to within the vicinity of the land platted by defendant for town-site purposes, showing that the court took the view that what had actually been

done tending to enhance the present value of the property prior to the condemnation proceedings and not what has simply been agreed to be done was admissible in evidence. Therein we see no prejudicial error.

For the reason, among others, that the writer was not under oath, the court did not err in excluding the booklet (Exhibit E) published by defendant prior to these proceedings, purporting to advertise the land in controversy as a health resort, and which was offered not "for anything that appears in the book, but just to show the status of the land, and what they had done prior to that time with regard to it."

After introducing evidence tending to prove the contention of the city that at the time these proceedings were commenced the most profitable use to which the tract in question could be put was for farming purposes, the court, over objection, permitted the witness McIntyre to testify in effect that its value for that purpose at that time was $3 per acre. There was no error in this. In *Wichita Falls & N. W. Ry. Co. v. Holloman*, 28 Okla. 419, 114 Pac. 700, quoting approvingly from *C. K. & N. Ry. Co. v. Davidson*, 49 Kan. 589, 31 Pac. 131, we said:

"Where a railroad company has taken and appropriated land for railroad purposes by virtue of condemnation proceedings, the owner of the land may recover for its depreciation in value, taking into consideration any purpose for which it might be the most profitably used. And in such case, where the land was situated near a city, and, although used as a farm, was suitable for subdivision into lots, blocks, etc., and for an addition to a city, such facts may be taken into consideration in determining the market value of the land and the amount of its depreciation in value by reason of the taking and appropriating of a part thereof by the railroad company for railroad purposes."

5 Ency. of Evidence, p. 196, states the rule thus:

"The measure of damages to which the owner is entitled for the property actually taken is the market value of such property at the time of the taking, considered in view of all the purposes to which it is adapted.  *  *  * "

—Which means that in a contest of this kind each side, upon issue joined, may properly introduce evidence tending to prove the most profitable use to which the property in question might be

put at the time of the commencement of the proceedings, and then prove its market value at the time, taking into consideration that use. It will then be the duty of the jury to determine what was the most profitable use to which the land could be put at that time and determine its value accordingly.

On cross-examination of the city engineer, defendant attempted to prove the revenue derived by the city from the water used from the dam in question from September 23d down to that time, and duly excepted when an objection to the testimony was sustained. The testimony was properly excluded, for the reason that the question before the court was one of just compensation to defendant only, and not one of revenue or benefit to the city.

In *Monongahela Navigation Co. v. United States*, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463, a private corporation had obtained a charter and franchise from the state of Pennsylvania to erect a dam and lock in the Monongahela river, with the right to take toll from passing water craft thereon. The United States, under power of eminent domain, demanded and took from the corporation the dam and lock constructed under its franchise. The trial court held the corporation entitled to compensation therefor, but not to compensation for the franchise or the right to take toll. But the court, speaking through Mr. Chief Justice Brewer, held otherwise, and said:

" * * * The question of just compensation is not determined by the value to the government which takes, but the value to the individual from whom the property is taken. * * * "

This case is cited in support of the doctrine laid down in *Blincoe v. C., O. & W. Ry. Co.*, 16 Okla. 286, 83 Pac. 903, 8 Ann. Cas. 689. In *Selma, Rome & Dalton Railroad Co. v. Keith,* 53 Ga. 178, the court said:

"It was error in admitting the testimony of Wells, as specified in the fourth ground of the motion, that defendant had erected a dam across the creek, and was using the water to run a pump to supply the road with water at that station, which was worth to defendant $40 a month. The issue on trial was the amount of damages the plaintiff had sustained from the defendant by the taking of his land for the use of its road, and not what it was worth to defendant, or how profitably it used or employed it, in its business."

We accordingly hold that the question of the value of the water to the city was not a proper matter of inquiry. See, also, *San Diego & Co. v. Neale*, 88 Cal. 50, 25 Pac. 977, 11 L. R. A. 604.

For the purpose of showing an admission by the city against its interest as to the value of the property taken, defendant offered in evidence Exhibit G, which purports to be an unsigned contract between the city and defendant, in effect, an offer of the property to the city, with certain reservations, for $25,000; and offered to prove by the clerk's records that the order of the city council approving said proposed contract had been vetoed by the mayor on grounds other than that the value stated in said contract was excessive. It was the contention that the veto of the mayor on other grounds was an implied admission on his part binding on the city that the property was worth $25,000. While we recognize generally, as stated in 1 Enc. of Ev. 549, that "public officers are but agents of the state or municipality they serve, and admissions made by them, in the performance of their duties and within their authority, are admissible against such state or municipality," and in *Glidden v. Town of Unity*, 33 N. H. 571, that "in all American courts town and other corporations are now to be considered as subject to the same presumptions and implications arising from their corporate acts or the acts of their agents, within the scope of their authority, without either vote, deed, or writing, as in the case of natural persons (*vide* authorities collected in 2 Kent, Comm. and Ang. & A. Corp. 212)"—we have found no case, and counsel have cited none, which so much as intimate that the unexpressed mental reservations of a mayor in exercising the veto power could be construed as an admission against the interest of the city. Rather are we of the opinion that the only act within the scope of the authority of the mayor at that time was, in effect, to approve or disapprove action of the council and sign or refuse to sign the contract; that, when either was done, his authority to act for the city in the premises ceased to exist, and that his reasons for his action in the premises, if given, much less reserved, being wholly disconnected from his official duties, would have been purely gratuitous and not binding on the city.

There is nothing in the exception to the charge of the court or error in his refusal to charge as requested by defendant.

There was conflict in the testimony as to the value of the tract considered for all purposes for which it could be used at the time of the taking, the same being estimated to be worth all the way from $240 up to $3,000 by the city's witnesses and up to $25,000 by those of defendant. The jury assessed the damage at $4,000, and we will not disturb it.

Finding no error in the record, the judgment of the trial court is affirmed.

All the Justices concur.